IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CARLY SINGER,
    Plaintiff,
v.                                                               CASE NO.:    1:14-cv-22310-DPG/Turnoff

NATIONAL UNION FIRE INSURANCE CO
OF PITTSBURGH PENNSYLVANIA,
a Pennsylvania corporation, and COLONY
INSURANCE COMPANY, a Virginia corporation,
    Defendants.
_____/

**PLAINTIFF'S OPPOSITION TO COLONY'S MOTION FOR SUMMARY JUDGMENT**

      Plaintiff, CARLY SINGER, by and through her undersigned counsel, hereby opposes Defendant COLONY INSURANCE's Motion for Summary Judgment, and states:

### I.    INTRODUCTION

      This case will determine whether Defendant Colony Insurance Company breached its contract with its insured, Latitude Solutions, Inc., to defend and indemnify Latitude for claims made by its former employee, Carly Singer. Ms. Singer, the Plaintiff in this action, brings this action both as a judgment creditor (having obtained an arbitration award which was then entered as a judgment against Latitude) and pursuant to an assignment of rights from Latitude giving her the right to pursue any and all claims, including those for defense, indemnity or bad faith, which were owed to Latitude by Colony.  The parties agree that much if not all of this matter may be resolved by summary judgment.  A separate motion shall be filed by Singer within this Court's dispositive motions deadline seeking the entry of summary judgment on her own behalf. The purpose of this memorandum is limited to opposing the arguments made by Colony seeking the entry of a summary judgment in its favor.

### II.    MEMORANDUM OF THE FACTS AND LAW

A. Standard of Review

1

> On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court explained the summary judgment standard as follows:
> 
> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear [27] the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.
> 
> Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). HN2 The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (citations omitted). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party [28] must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; see also Fed. R. Civ. P. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). That party must demonstrate that there is a "genuine issue for trial." Matsushita, 475 U.S. at 587. An action is void of a material issue for trial "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita, 475 U.S. at 587; see also Anderson, 477 U.S. at 249.

*Miami Battery Mfg. Co. v. Boston Old Colony Ins. Co.*, 1999 U.S. Dist. LEXIS 23357, 26-28, 1999 WL 34583205 (S.D. Fla. Apr. 28, 1999).

B. <u>Applicable Florida Insurance Law</u>

The parties agree Florida law applies to this dispute.  Under Florida law, insurance companies are responsible for the words they choose to utilize in defining coverage through their policies. If insurers want to add or remove, or use different words, they may do so. "The lack of

2

a definition of an operative term in a policy does not necessarily render the term ambiguous and in need of interpretation by the courts." *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1076 (Fla. 1998). *See also Container Corp. of America v. Maryland Cas. Co., 707 So. 2d 733, 736 (Fla. 1998); Deni Assocs. of Florida, Inc. v. State Farm Fire & Cas. Ins. Co., 711 So. 2d 1135, 1139 (Fla. 1998).* "However, where policy language is subject to differing interpretations, the term should be construed liberally in favor of the insured and strictly against the insurer." *Id.* "In addition, 'when an insurer fails to define a term in a policy, . . . the insurer cannot take the position that there should be a 'narrow, restrictive interpretation of the coverage provided'." *Id.* (quoting *State Comprehensive Health Ass'n v. Carmichael*, 706 So. 2d 319, 320 (Fla. 4th DCA 1997).[1]

In *CTC Dev. Corp.*, the policy left the term "accident" undefined. *See CTC Dev. Corp.*, 720 So. 2d at 1076. There, the court held that the undefined, ambiguous term should be construed liberally and in favor of coverage. *See Id.* The Court determined that "where the term 'accident' in a liability policy is not defined, the term, being susceptible to varying interpretations, encompasses not only 'accidental events,' but also injuries or damage neither expected nor intended from the standpoint of the insured. *Id.*

Under Florida law, the Court's consideration of the duty to defend is limited to the allegations in Singer's Complaint against Latitude and the policy provisions. The entire complaint, including all the factual allegations and the attached exhibits, must be considered.[2] All parts of the

---

[1] It should be noted that Colony's policy does not define _____.

[2] "It is well settled that an insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage. The duty to defend must be determined from the allegations in the complaint. The duty to defend is of greater breadth than the insurer's duty to indemnify, and the insurer must defend even if the allegations in the complaint are factually incorrect or meritless. Indeed, 'when the actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint control in determining the insurer's duty to defend.' Any

3

insurance policy must be considered and given effect, with coverage provisions broadly construed and exclusions narrowly construed in favor of coverage. *See Auto Owners Ins. Co. v. Anderson*, 756 So.2d 29 (Fla. 2000).

Even where the allegations do not directly state the facts needed for the claim to be covered, if an inference exists in the language of the Complaint that brings the claim within the policy's coverage, there is a duty to defend. See *Biltmore Constr. Co. v. Owners Ins. Co.*, 842 So. 2d 947, 949, 2003 Fla. App. LEXIS 3783, 4-5, 28 Fla. L. Weekly D 785 (Fla. Dist. Ct. App. 2d Dist. 2003)("Here, the allegation that there was damage due to severe water infiltration could obviously include damage to property other than the improperly constructed windows and exterior walls, as it could include damage to carpeting and drywall. Therefore, there was potential coverage under the policy, and Owners had a duty to defend the claim").

Singer does not disagree with Colony's contention that the duty to defend is broader than the duty to indemnify, and that there is no coverage for indemnity if there is no duty to defend. In applying this standard to Singer's underlying complaint and the relevant policy language, however, it is clear that allegations made in Singer's Complaint triggered Colony's duty to defend Latitude, and in denying Latitude a defense Colony breached its policy. Likewise, as will be further addressed herein, Singer disagrees with Colony's conclusion that it has no duty to indemnify Latitude for the arbitration award.

    C.  <u>Relevant Policy Provisions and Allegations Result in a Duty to Defend</u>

Colony's insurance policy was attached to Singer's Amended Complaint (DE 50-6) and for the Court's convenience is attached to this Memorandum as Exhibit 1. With respect to both Coverage A (Bodily Injury and Property Damage) and Coverage B (Personal and Advertising

---

doubts regarding the duty to defend must be resolved in favor of the insured. *Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435, 442-443 (Fla. 2005)(citations omitted).

Injury), Colony's policy provides the following coverage provision related to the duty to defend: "We have the right and duty to defend the insured against any 'suit' seeking 'damages' to which this insurance applies. However, we will have no duty to defend the insured against any 'suit' seeking 'damages' for 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance does not apply." The policy has several coverage provisions describing types of claims to which the policy applies. The provisions relevant to Singer's claim against Latitude are Insuring Agreement A and Insuring Agreement B:

1. Insuring Agreement A – Bodily Injury and Property Damage
    a. We will pay, in excess of the Deductible shown in the Declarations, those sums the insured becomes legally obligated to pay as "damages" because of "bodily injury" or "property damage" to which this insurance applies …."
    b. This insurance applies to "bodily injury" and "property damage" only if all of the following conditions are met:
       (1) No common fact, incident, circumstance or "occurrence" was reported as "claim" or potential "claim" against you or under any prior policy or disclosed in the application for this Policy;
       (2) The "bodily injury" or "property damage" is caused by an "occurrence" …
       (3) The "bodily injury" or "property damage" occurs during the "policy period".
2. Insuring Agreement B – Personal and Advertising Injury
    a. We will pay, in excess of the Deductible shown in the Declarations, those sums that the insured becomes legally obligated to pay as "damages" because of "personal and advertising injury" to which this insurance applies …
    b. This insurance applies to "personal and advertising injury" only if all the following conditions are met:
       (1) No common fact, incident, circumstance or "occurrence" was reported as "claim" or potential "claim" against you or under any prior policy or disclosed in the application for this Policy;
       (2) The offense forming the basis of the "claim" took place during the "policy period"; and
       (3) The "personal and advertising injury" is caused by an offense committed in the "coverage territory".

It should be noted that with respect to the insuring agreements listed above, there is no dispute regarding whether the acts complained of by Ms. Singer took place in the coverage territory defined by the policy or whether they took place during the policy period. The dispute lies in

5

whether the acts alleged by Ms. Singer in her complaint against Latitude constitute an "occurrence" under Insuring Agreement A or "personal or advertising injury" under insuring agreement B, and if so, whether an exclusion applies to eliminate coverage.

The following definitions contained in the "Common Policy Provisions" apply to the consideration of whether there is coverage for Ms. Singer's claims against Latitude:

> Section VII – Common Definitions
> \* \* \*
> 2. "Bodily Injury" means bodily injury, **mental anguish,**, sickness or disease sustained by a person, including death resulting from any of these at any time.
> 3. "Claim":
>     a. With respect to Insuring Agreements A, B … "claim" means a demand for monetary "damages".
> \* \* \*
> 5. **"Damages"** means **the monetary amount of judgments, awards and settlements an insured becomes legally obligated to pay as a result of a "claim."** "Damages" does not include equitable or non-pecuniary relief, disgorgement of profits, sanctions, fines or penalties.
> \* \* \*
> 8. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.
> \* \* \*
> 17. **"Occurrence" means an accident**, including continuous or repeated exposure to substantially the same general harmful conditions.
> \* \* \*

Like in *CTC v. State* Farm, "accident" is not defined in Colony's policy. As such, under Florida law, "accident" encompasses not only 'accidental events,' but also injuries or damage neither expected nor intended from the standpoint of the insured. *CTC Dev. Corp.*, 720 So. 2d at 1076. In addition to the definitions contained in the Common Policy Provisions, the following additional definitions apply only to the Commercial General Liability Coverage Part, which contains Coverages A and B described above:

> Section IV – Additional Definitions
> \* \* \*
> 5. **"Personal and advertising injury"** means **injury, including** consequential **"bodily injury"**, arising out of one or more of the following offenses:
>     a. **False arrest, detention or imprisonment**;
>     b. Malicious prosecution;
> \* \* \*
>     d. **Oral** or written **publication**, in any manner, **of material that**

6

>    **slanders** or libels **a person** or organization or disparages a person's or organization's goods, products or services;
>    e.    **Oral** or written **publication**, in any manner, **of material that violates a person's right of privacy**.

The Complaint filed by Ms. Singer against Latitude was attached to Ms. Singer's Amended Complaint in this action (DE 50-3) and is attached as Exhibit 2 to this Memorandum for the Court's convenience.  Singer agrees that for the purpose of deciding whether Colony had a duty to defend Latitude, the Court must limit its consideration to the underlying Complaint and the Policy, considering all factual inferences in favor of Singer.  Colony would like for the Court to consider only whether the itemized "Counts" or claims asserted by Singer against Latitude are covered by the policy. This is not a correct application of Florida law. If any factual allegation, or inference that can be drawn from any factual allegation, results in a potential for coverage, then Colony had a duty to defend Latitude. See *Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435, 442-443 (Fla. 2005); *Biltmore Constr. Co. v. Owners Ins. Co*., 842 So. 2d at 949. This is true whether or not such allegations were ultimately proven by Ms. Singer.

In considering the question of whether Colony had the duty to defend Latitude, the Court must look at the policy in its entirety and the Complaint in its entirety to determine whether any of the allegations in the complaint raise the potential of coverage. If any potential for coverage exists, Colony had the duty to defend the entire action, even if the Complaint also contained claims that were not covered.

In general, Singer makes claims for sexual harassment by Cohen, Latitude's Chief Financial Officer at the time the incident(s) occurred. She also makes allegations against Latitude which are related to the actions of other Latitude employees, including its Human Resources Director, Ms. Greco, and its CEO, Mr. Wohler, after they were informed of Cohen's behavior. Among other things, Singer's Complaint is replete with allegations of damages for mental anguish, which falls within the policy's definition of "bodily injury."  See DE 50-3 at para. 71, 93, 108,

115, 126, 150, 168, 177, 180, 187, 193, 200, and 207. Ms. Singer makes a claim for "bodily injury" under the policy for an "occurrence" (sexual harassment by Cohen) which was pursuant to *CTC Development* an "accident." Although no one contends Cohen did not intend to send offensive text messages and to sexually harass Singer, he was not acting in the scope of his employment in committing these acts, it was not alleged that Latitude had any prior knowledge of Cohen's inappropriate behavior, and there is no evidence injuries caused to Singer were intended by Latitude.

Some of the events described in Singer's Complaint took place in Latitude's office during and after business hours, and other events involved the communication of inappropriate text messages and photographs by Cohen to Singer's cellular phone.  The Complaint does not explicitly state whether Singer's cellular phone was her personal phone owned by her, but given that she was a secretary making barely over $50,000 per year, and there was no indication that Latitude provided a cell phone for Ms. Singer's use, it is a reasonable inference from the Complaint that all of the text messages were sent to Ms. Singer's personal phone (outside of her course of employment) and the Complaint alleges some were received by her outside of business hours (again, outside of the course of her employment).  DE 50-3 at para. 22.[3]

Singer's underlying Complaint contains the following allegations which create the potential for coverage under Coverage A and/or Coverage B:

The intrusion into Singer's privacy through inappropriate texts reaching her private cellular phone including outside of business hours when she was in her home, as well as the intrusion of

---

[3] It is unclear whether the cellular phone used by Cohen to send inappropriate texts to Singer was his personal phone or whether it was owned by the company.  Wohler testified in his deposition that he confirmed the cell phone number used by Cohen in sending inappropriate text messages to Singer was Cohen's cell phone number.  (Wohler, DE __ at 97/4-21).  Cohen testified the phone was his company cell phone. (Cohen, DE __ at 112/3-13).  This factual issue was not addressed by the Arbitrator in his award.

the police in the privacy of her home at 2:30 a.m. in response to a call from Latitude's CEO, Wohler, constituted an invasion of privacy which, pursuant to the terms of the policy's "personal and advertising injury" provision in Coverage B, should be covered. That provision includes coverage for: "Oral or written publication, in any manner, of material that violates a person's right of privacy." The discussion of this issue in *Purrelli v. State Farm* is instructive:

> In response to State Farm's declaratory action, Purrelli based his claim for coverage exclusively on his personal umbrella liability policy. That policy purported to limit insurance coverage to "accidents" which result in "personal injury." The policy defined personal injury to explicitly include "invasion of rights of privacy" and eleven other intentional torts, including assault and battery, false arrest, false imprisonment, libel, slander, and defamation of character. The policy contained a provision excluding personal injuries that were "expected or intended" by the insured.
> We conclude the trial court erred by granting State Farm's motion for a judgment on the pleadings because State Farm's personal umbrella liability policy is ambiguous. **[620]** The policy purports to insure invasion of privacy, an intentional tort, but excludes acts "intended" by the insured and limits coverage to "accidents." *HN1* If an insurance policy is ambiguous, the ambiguity must be resolved liberally in favor of the insured. *SeePrudential Property & Cas. Ins. Co. v. Swindal*, 622 So. 2d 467, 472 (Fla. 1993). Florida case law does not allow insurers to "use obscure terms to defeat the purpose for which a policy is purchased." *Weldon v. All American Life Ins. Co.*, 605 So. 2d 911, 915 (Fla. 2d DCA 1992).

*Purrelli v. State Farm Fire & Cas. Co.*, 698 So. 2d 618, 619-620, 1997 Fla. App. LEXIS 9753, 2-3, 22 Fla. L. Weekly D 2099 (Fla. Dist. Ct. App. 2d Dist. 1997). In this case, the invasion of the right to privacy was through the oral and written publication of material, specifically: 1) the invasion of Ms. Singer's personal and private domain through the receipt of offensive text messages on her private cellular phone and during hours when she was at home, and 2) the oral publication of information which slandered Ms. Singer by making allegations of her mental instability to the police, resulting in the physical invasion of into Ms. Singer's private domain, her home, by the police and in her being confined to a mental hospital for evaluation pursuant to the Baker Act.

Colony cites *State Farm v. Compupay* in support of its claim that there should be no duty to defend in this case. In fact, when considered in light of the facts of this matter, *Compupay* supports Singer's argument that Colony had a duty to defend Latitude. That case is distinguishable from this one in that Compupay, unlike Latitude, was aware of a pattern of sexual harassment and discrimination by its employee, Wank, but did nothing about it. "Thus, because we find that Wank's acts were intentional, and because Compupay was aware of Wank's history of sexual harassment activities, the definition of occurrence is not met and there can be no coverage under the bodily injury policy provisions." *State Farm Fire & Casualty Co. v. Compupay*, 654 So. 2d 944, 947, 1995 Fla. App. LEXIS 2590, 8, 20 Fla. L. Weekly D 653 (Fla. Dist. Ct. App. 3d Dist. 1995). Unlike Compupay, there was no allegation in this case that Latitude was aware of Cohen's conduct prior to February 4, 2012, the day Ms. Singer reported it to Wohler. Compupay attempted to establish coverage for an invasion of privacy, arguing that the unwanted physical touching of its employee by Wank constituted an invasion of privacy. Although the court found no coverage for Compupay under that provision, the Court's discussion supports coverage in this case, where there was oral and written publication constituting the invasion of privacy.

> Compupay relies on this line of cases to urge that Ode's allegations of offensive and undesired touching state a cause of action for invasion of privacy, bringing the claim within coverage under the personal injury clause. The argument fails because it ignores the clear and unambiguous language in the personal injury clause.
> The clause clearly states that coverage is available for "a publication or utterance in violation of an individual's right to privacy. . . ." (Emphasis added). The clause does not cover causes of action under the broader umbrella of invasion of privacy torts. Thus, the policy covers actions within the traditional invasion of privacy tort: a publication of personal matter. It does not include coverage for a physical invasion of the complainant's person unaccompanied by the other elements of the cause of action.

*State Farm Fire & Casualty Co. v. Compupay*, 654 So. 2d 944, 949, 1995 Fla. App. LEXIS 2590, 14-15, 20 Fla. L. Weekly D 653 (Fla. Dist. Ct. App. 3d Dist. 1995).

None of the cases cited by Colony address Ms. Singer's most significant Coverage B claim. Subsequent to Ms. Singer's having informed Mr. Wohler on February 4 of Cohen's sexual

10

harassment of her, Wohler contacted the police, resulting in Ms. Singer's involuntary detention in a mental hospital pursuant to the Baker Act for approximately 10 hours. Wohler had to have been aware that such a call could have resulted in Ms. Singer's confinement.  After being evaluated and tested for drugs, Ms. Singer was released.  This fact gives rise to the potential for coverage for false arrest or false imprisonment.  "False imprisonment is the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and deprivation of his liberty. *Fisher v. Payne*, 93 Fla. 1085, 113 So. 378." *Johnson v. Weiner*, 155 Fla. 169, 171, 19 So. 2d 699, 700, 1944 Fla. LEXIS 500, 3 (Fla. 1944).

Colony contends that Singer's claims are excluded from coverage, and therefore no duty to defend or indemnify exists. Pursuant to Florida law, exclusionary provisions must be interpreted narrowly.  Colony argues that Singer's claims are barred by the Employer's Liability and Employment Related Practices exclusions. Although some aspects of Singer's Complaint may be barred by these exclusions, sufficient allegations are not barred to create a duty to defend.

The Employer's Liability exclusion excludes claims "[b]ased upon or arising out of 'bodily injury' to: a. An 'employee' of the insured arising out of **and** in the course of (1) Employment by the insured; or (2) Performing duties related to the conduct of the insured's business."  The question of whether there is insurance coverage is limited to a consideration of the policy and the factual allegations of the Complaint.  Colony refers repeatedly to the broad interpretation of the phrase "arising out of," which Singer does not contradict, but fails to acknowledge that its policy contains language in the Employers Liability exclusion that significantly limits the exclusion. Although Singer's claims could be considered to be "arising out of" bodily injury (mental anguish) to an employee of the insured (Singer), for the exclusion to apply, her claimed "bodily injury" must both "arise out of" her employment AND take place in the course of her employment by the insured or performing duties related to the conduct of the insured's business. Policy exclusions must be narrowly construed. For this exclusion to bar coverage for Singer's claims, Singer would

11

have to have been acting in the course of her employment or performing duties related to the conduct of Latitude's business for the exclusion to apply. Neither performing oral sex upon her supervisor nor receiving lewd and offensive text messages and photographs on her personal phone were within the course of Singer's employment, nor could those activities be considered engaging in the conduct of Latitude's business. Even if the Court were to find Cohen's harassment of Singer fell within this exclusion, this exclusion would not apply to the false arrest and/or false imprisonment allegations discussed above.

> The Employment-Related Practices exclusion excludes liability to any person
>
> arising out of any … employment-related practices, policies, acts, or omissions, including allegations of discrimination **by the insured** against any person on the basis of age, color, race, sex, creed, national origin, marital status, handicap, physical disability, sexual preference or allegations of coercion, demotion, negative performance evaluation, reassignment, discipline, defamation, harassment, humiliation, assault, or battery.

This exclusion read narrowly applies to "practices, policies, acts or omissions" "by the insured." Section III of the policy defines who is an "insured." It states: "If you are designated in the Declarations as: [a]n organization other than a partnership, joint venture, or limited liability company, you are an insured. Your "executive officers" and directors are insureds, **but only with respect to their duties as your "executive officers" or directors."** There are no allegations in Singer's Complaint that would support a finding that Cohen was acting within the scope of his duties as the Chief Financial Officer of Latitude when he sent Singer inappropriate and offensive text messages or pressured her to perform oral sex upon him. Although certain allegations for acts of Latitude are for employment practices that would be barred by this exclusion, many are not, and so the duty to defend exists.

### D. Colony Has a Duty to Indemnify Latitude for the Arbitration Award

The Arbitration Award against Latitude was attached to the Plaintiff's Amended Complaint as DE 50-4 and the related Judgment, which includes an award of attorney's fees and costs, can be

found at DE 50-5.  The Arbitrator awarded Singer $550,000 in compensatory damages and $100,000 in punitive damages for the following counts of the Complaint:

    1) Count VIII – Negligent Supervision and Training against Latitude

    2) Count X – Negligent Infliction of Emotional Distress against Latitude

    3) Count XIII – Sexual Harassment pursuant to Fla. Stat. §760 against Latitude.

There was no distinction of the damages awarded for the various claims.

Having breached its duty to defend and left Latitude to its own devices, Colony now urges the Court to reward its behavior by placing upon Singer a burden that should have been addressed by Colony in the course of the arbitration. More specifically now, after the award has been rendered, Colony is taking the position that there can be no recovery by Singer (or indemnity on behalf of Latitude) because there was no finding by the arbitrator specifying the amount of damages allocated to covered and non-covered claims. In support of this proposition, Colony cites *Duke v. Hoch*, 468 F.2d 973, 974, 1972 U.S. App. LEXIS 7288, 1 (5th Cir. Fla. 1972). Colony's reliance is misplaced, as in that matter the insurer defended the claim under a reservation of rights, thereby protecting its right to seek an allocation of the damages. In *Aetna Ins. Co. v. Waco Scaffold & Shoring Co.*, 370 So. 2d 1149, 1152, 1978 Fla. App. LEXIS 16172, 10 (Fla. Dist. Ct. App. 4th Dist. 1978), the Court held, "Regardless of the fact that under the Mason complaint appellants were required to defend the suit, the burden of proving the allegations regarding coverage is upon appellee and appellee failed to prove that appellants' policies covered the liability upon which the verdict and judgment were founded."  Again, the insurer defended.  By refusing to defend the claim, Colony has waived its right to later demand that the arbitration award be allocated to covered and non-covered claims. If the Court disagrees, then there is a question of fact regarding how much of the award should be allocated to which claims, and summary judgment cannot be granted. See also *United States Concrete Pipe Co. v. Bould*, 437 So. 2d 1061, 1065, 1983 Fla. LEXIS 2934, 11 (Fla. 1983)( If a judgment includes elements for which an insurer is liable and

also elements beyond the coverage of the policy, the burden of apportioning or allocating these damages is on the party seeking to recover from the insurer.)

Colony's arguments that statutory attorney's fees and punitive damages are not covered by the policy are similarly without merit.  "Florida public policy does not preclude insurance coverage of punitive damages when the insured himself is not personally at fault, but is merely vicariously liable for another's wrong. 31 Fla.Jur.2d Insurance § 876 (1981)." *United States Concrete Pipe Co. v. Bould*, 437 So. 2d 1061, 1064, 1983 Fla. LEXIS 2934, 6 (Fla. 1983).  To the extent these items need to be apportioned, that issue is again a factual issue which cannot be determined on summary judgment.

WHEREFORE, Plaintiff Carly Singer, for the reasons stated herein, respectfully requests that Colony's Motion for Summary Judgment be DENIED.

>
> Respectfully submitted,
>
> //  *Michelle Niemeyer*_____
> Michelle Melin Niemeyer
> Counsel for Plaintiff Carly Simon
> Florida Bar No. 119628
> Michelle M. Niemeyer, P.A.
> 2665 South Bayshore Drive, Ste 700
> Miami, FL 33133
> (305) 443-1818
> mniemeyer@paymyclaim.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on April 20, 2015, I electronically filed the foregoing document with the Clerk of Courts using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

>
> BY:   //  *Michelle Niemeyer*_____
> Michelle Melin Niemeyer
> Florida Bar No. 119628

14