IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CARLY SINGER,
    Plaintiff,
v.                                              CASE NO.:   1:14-cv-22310-DPG/Turnoff

NATIONAL UNION FIRE INSURANCE CO
OF PITTSBURGH PENNSYLVANIA,
a Pennsylvania corporation, and COLONY
INSURANCE COMPANY, a Virginia corporation,
    Defendants.
_____/

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, CARLY SINGER, by and through her undersigned counsel and pursuant to Fed. R. Civ. Proc. 56 and S.D. Fla. Local Rule 56.1, hereby moves for Summary Judgment, and states:

**I.     INTRODUCTION**

The issue in this case is whether the commercial general liability insurance policy Colony Insurance Company (hereinafter "Colony") issued to Latitude Solutions, Inc. (hereinafter "Latitude") obligated Colony to defend and indemnify Latitude for claims made against it and damages awarded through arbitration to the Plaintiff in this matter, Carly Singer (hereinafter "Ms. Singer"). Ms. Singer has brought this action both in her capacity as a judgment creditor and pursuant to an assignment of rights granted by Latitude through its Bankruptcy Trustee. [See Affidavit of Carey D. Ebert, attached as Exhibit 1, and attached Assignment of Rights].

Colony's policy, when considered in light of Plaintiff's complaint against Latitude, provided a duty to defend Latitude which Colony breached when it denied Latitude's claim without providing a defense. The arbitrator's award [DE 50-4] and the related judgment [DE 50-5], which added an award of attorney's fees, costs, and post-judgment interest, are covered by the policy. To the extent any portion of the damages awarded to Singer may not have been covered, Latitude waived its right to a differentiated verdict form. Given these undisputed facts, summary judgment

1

must be granted to Plaintiff for the full amount of the judgment including compensatory and punitive damages, costs, attorney's fees and interest. Plaintiff is also entitled to an award of attorney's fees incurred in this action pursuant to Fla. Stat. § 627.428.

## II.     MEMORANDUM OF THE FACTS AND LAW

### A. Factual Background[1]

Carly Singer was hired by Latitude to be the Executive Assistant to its Chief Executive Officer, Harvey Kaye, and its Chief Financial Officer, Matthew Cohen, beginning in February, 2011. She was paid $53,000 per year. The company developed serious financial problems, resulting in layoffs. In November, 2011, Singer began receiving inappropriate text messages from Cohen on her cellular phone. These messages included sexually graphic photographs and sexual innuendo. Later that month, Cohen summoned Ms. Singer into his office after hours when most employees had left the office, pulled her toward him, and kissed her. He told her the company was in trouble financially and that he would protect her job, dropped his pants, and demanded she perform oral sex upon him. In January, 2012, there were significant layoffs and Mr. Kaye, the CEO, was replaced by a new CEO named Jeffrey Wohler. Ms. Singer did not lose her job, but her pay was cut by 25% and Cohen informed her he would make up the difference in her pay personally as long as she continued to perform oral sex upon him. On February 4, 2012, Ms. Singer called Wohler and informed him of Cohen's behavior. Wohler immediately involved employment counsel from the law firm of DLA Piper[2] and met with the company's Human Resources Director, Nancy Greco.

---

[1] Plaintiff refers the Court to her Statement of Material Facts for citations to supporting documentation related to the factual statements contained herein.

[2] Wohler testified that he did not visit Singer that same evening "under strict guidelines from legal counsel." Wohler, DE 60-6 at 91/5-8. The Complaint alleges Ms. Singer was first contacted by DLA Piper's investigator on February 5. DE 50-3 at para. 55. See also Moss, DE 60-5 at 113/9-17.

2

Although the humiliation and stress associated with Cohen's behavior had to be significant, Wohler then negligently took action in a way that had to have caused a much more lasting impact. Based upon hearsay and not having spoken with or seen Ms. Singer on the advice of counsel, Wohler contacted the police late in the evening of February 4 or in the early hours of February 5 and informed the police that he was concerned Ms. Singer would harm herself. This call resulted in Ms. Singer being awakened by the police at approximately 2:30 a.m., taken out of her home to a mental institution in handcuffs, and held there against her will pursuant to the Baker Act.  Ten hours later, after drug testing and a psychiatric evaluation confirmed she was not in fact a danger to herself or others, Ms. Singer was released. As was stated by the Arbitrator, "Any ongoing effect on Singer's life of her employer having forced her to a clinic with handcuffs for examination cannot be assessed." DE 50-4 at 6.  It is the Plaintiff's contention that this negligent act of Wohler's, which accounts for the most significant of her damages, falls within the policy's coverage for "personal and advertising injury" and is not excluded by the policy.  Through these allegations, a duty to defend existed. It is also Plaintiff's contention, for reasons explained herein, the policy exclusions raised by Latitude do not apply to its vicarious liability for Cohen's actions.

Singer sued Latitude and Cohen through a complaint with extensive factual recitations and allegations of both intentional and negligent acts, as well as claims for punitive damages. DE 50-3.  Colony immediately denied coverage for both defense and indemnity, taking the position that the employment related practices exclusion and an exclusion for damages to employees acting in the course of employment barred coverage. The matter was referred to arbitration due to a contractual provision in Ms. Singer's employment agreement, which provision also contained a prevailing party attorney's fee provision. Cohen was defended by Latitude's director's and officer's liability insurer, but that insurer's policy did not provide entity coverage, so Latitude was left without a defense after DLA Piper withdrew from the representation.

The arbitrator awarded Singer $550,000 in compensatory and $100,000 in punitive

3

damages. The award was confirmed by a judgment entered on April 24, 2014 which added $201,081.55 in attorney's fees and costs, as well as statutory interest. Through this motion for summary judgment, Plaintiff requests that this Court enter judgment in her favor finding that Colony breached its duty to defend and indemnify Latitude, awarding her: 1) the full amount of the judgment entered April 24, 2014; 2) the attorney's fees and costs incurred by Latitude with its counsel, DLA Piper, in defending against Singer's claims, and 3) retaining jurisdiction to award attorney's fees and costs in this action.

### B.  Standard of Review

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court explained the summary judgment standard as follows:
> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear [27] the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). HN2 The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (citations omitted). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party [28] must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; see also Fed. R. Civ. P. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). That party must demonstrate that there is a "genuine issue for trial." Matsushita, 475 U.S. at 587.

> An action is void of a material issue for trial "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita, 475 U.S. at 587; see also Anderson, 477 U.S. at 249.

*Miami Battery Mfg. Co. v. Boston Old Colony Ins. Co.*, 1999 U.S. Dist. LEXIS 23357, 26-28, 1999 WL 34583205 (S.D. Fla. Apr. 28, 1999).

C.  Applicable Florida Insurance Law

The parties agree Florida law applies to this dispute. Under Florida law, insurance companies are responsible for the words they choose to include in their policies. If insurers want to add or remove, or use different words, they may do so. "The lack of a definition of an operative term in a policy does not necessarily render the term ambiguous and in need of interpretation by the courts." *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1076 (Fla. 1998). *See also Container Corp. of America v. Maryland Cas. Co., 707 So. 2d 733, 736 (Fla. 1998); Deni Assocs. of Florida, Inc. v. State Farm Fire & Cas. Ins. Co., 711 So. 2d 1135, 1139 (Fla. 1998).* "However, where policy language is subject to differing interpretations, the term should be construed liberally in favor of the insured and strictly against the insurer." *Id.* "In addition, 'when an insurer fails to define a term in a policy, . . . the insurer cannot take the position that there should be a 'narrow, restrictive interpretation of the coverage provided'." *Id.* (quoting *State Comprehensive Health Ass'n v. Carmichael*, 706 So. 2d 319, 320 (Fla. 4th DCA 1997).[3]

In *CTC Dev. Corp.*, the policy left the term "accident" undefined. *See CTC Dev. Corp.*, 720 So. 2d at 1076. There, the court held that the undefined, ambiguous term should be construed liberally and in favor of coverage. *See Id.* The Court determined that "where the term 'accident' in a liability policy is not defined, the term, being susceptible to varying interpretations,

---

[3] It should be noted that Colony's policy does not define "false arrest" "detention" "imprisonment," or "malicious prosecution." The term "employee" is defined only to the extent that the policy includes temporary or leased workers as employees, which is not relevant to this action.

encompasses not only 'accidental events,' but also injuries or damage neither expected nor intended from the standpoint of the insured. *Id.*

Under Florida law, the Court's consideration of the duty to defend is limited to the allegations in Singer's Complaint against Latitude and the policy provisions. The entire complaint, including all the factual allegations and the attached exhibits, must be considered.[4] All parts of the insurance policy must be considered and given effect, with coverage provisions broadly construed and exclusions narrowly construed in favor of coverage. *See Auto Owners Ins. Co. v. Anderson*, 756 So.2d 29 (Fla. 2000).

Even where the allegations do not directly state the facts needed for the claim to be covered, **if an inference exists** in the language of the Complaint that brings the claim within the policy's coverage, there is a duty to defend. See *Biltmore Constr. Co. v. Owners Ins. Co.*, 842 So. 2d 947, 949, 2003 Fla. App. LEXIS 3783, 4-5, 28 Fla. L. Weekly D 785 (Fla. Dist. Ct. App. 2d Dist. 2003)("Here, the allegation that there was damage due to severe water infiltration could obviously include damage to property other than the improperly constructed windows and exterior walls, as it could include damage to carpeting and drywall. Therefore, there was potential coverage under the policy, and Owners had a duty to defend the claim").

Singer does not disagree with Colony's contention that the duty to defend is broader than the duty to indemnify, and that there is no coverage for indemnity if there is no duty to defend. In applying this standard to Singer's underlying complaint and the relevant policy language, however,

---

[4] "It is well settled that an insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage. The duty to defend must be determined from the allegations in the complaint. The duty to defend is of greater breadth than the insurer's duty to indemnify, and the insurer must defend even if the allegations in the complaint are factually incorrect or meritless. Indeed, 'when the actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint control in determining the insurer's duty to defend.' Any doubts regarding the duty to defend must be resolved in favor of the insured. *Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435, 442-443 (Fla. 2005)(citations omitted).

it is clear that allegations made in Singer's Complaint triggered Colony's duty to defend Latitude, and in denying Latitude a defense Colony breached its policy. Likewise, as will be further addressed herein, Singer disagrees with Colony's conclusion that it has no duty to indemnify.

### D. Relevant Policy Provisions and Allegations Result in a Duty to Defend

Colony's insurance policy was attached to Singer's Amended Complaint (DE 50-6) and for the Court's convenience is attached to this Memorandum as Exhibit 2.  The coverage provisions relevant to Singer's claim against Latitude are contained in Insuring Agreement A (Bodily Injury and Property Damage) and Insuring Agreement B (Personal and Advertising Injury)[5]:

1. Insuring Agreement A – Bodily Injury and Property Damage
   a. We will pay, in excess of the Deductible shown in the Declarations, those sums the insured becomes legally obligated to pay as "damages" because of "bodily injury" or "property damage" to which this insurance applies …."
   b. This insurance applies to "bodily injury" and "property damage" only if all of the following conditions are met:
   * * *
   (2) The "bodily injury" or "property damage" is caused by an "occurrence" …
   * * *
2. Insuring Agreement B – Personal and Advertising Injury
   a. We will pay, in excess of the Deductible shown in the Declarations, those sums that the insured becomes legally obligated to pay as "damages" because of "personal and advertising injury" to which this insurance applies …

The parties' dispute lies in whether the acts alleged by Ms. Singer constitute an "occurrence" under Insuring Agreement A or "personal or advertising injury" under insuring agreement B, and if so, whether an exclusion applies to eliminate coverage.

The following definitions contained in the "Common Policy Provisions" apply to the consideration of whether there is coverage for Ms. Singer's claims against Latitude:

---

[5] With respect to the insuring agreements listed above, there is no dispute regarding whether the acts complained of by Ms. Singer took place in the coverage territory defined by the policy or whether they took place during the policy period.

7

Section VII – Common Definitions
* * *
2. "Bodily Injury" means bodily injury, **mental anguish,**, sickness or disease sustained by a person, including death resulting from any of these at any time.
3. "Claim":
   a. With respect to Insuring Agreements A, B … "claim" means a demand for monetary "damages".
* * *
5. **"Damages"** means **the monetary amount of judgments, awards and settlements an insured becomes legally obligated to pay as a result of a "claim."** "Damages" does not include equitable or non-pecuniary relief, disgorgement of profits, sanctions, fines or penalties.
* * *
8. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.
* * *
17. **"Occurrence" means an accident**, including continuous or repeated exposure to substantially the same general harmful conditions.
* * *

Like in *CTC v. State* Farm, "accident" is not defined in Colony's policy. As such, under Florida law, "accident" encompasses not only 'accidental events,' but also injuries or damage neither expected nor intended from the standpoint of the insured. *CTC Dev. Corp.*, 720 So. 2d at 1076. In addition to the definitions contained in the Common Policy Provisions, the following additional definitions apply only to the Commercial General Liability Coverage Part, which contains Coverages A and B described above:

Section IV – Additional Definitions
* * *
5. **"Personal and advertising injury"** means **injury, including** consequential **"bodily injury"**, arising out of one or more of the following offenses:
   a. **False arrest, detention or imprisonment**;
   b. Malicious prosecution;
* * *
   d. **Oral** or written **publication**, in any manner, **of material that slanders** or libels **a person** or organization or disparages a person's or organization's goods, products or services;
   e. **Oral** or written **publication**, in any manner, **of material that violates a person's right of privacy**.

The Complaint filed by Ms. Singer against Latitude was attached to Ms. Singer's Amended Complaint in this action (DE 50-3) and is attached as Exhibit 3 to this Memorandum for the Court's convenience. Singer agrees that for the purpose of deciding whether Colony had a duty to defend

Latitude, the Court must limit its consideration to the underlying Complaint and the Policy, considering all factual inferences in favor of Singer. If any factual allegation, or inference that can be drawn from any factual allegation, results in a potential for coverage, then Colony had a duty to defend Latitude. See *Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435, 442-443 (Fla. 2005); *Biltmore Constr. Co. v. Owners Ins. Co.*, 842 So. 2d at 949. This is true whether or not such allegations were ultimately proven by Ms. Singer. The Court must look at the policy in its entirety and the Complaint in its entirety, including its attachments, to determine whether any of the allegations in the Complaint raise the potential of coverage. If any potential for coverage exists, Colony had the duty to defend the entire action, even if the Complaint also contained claims that were not covered.

In general, Singer makes claims for sexual harassment including statutory claims for employment discrimination arising out of the harassment by Cohen, who was Latitude's Chief Financial Officer when the acts occurred. She also makes allegations against Latitude which are related to the actions of other Latitude employees, including its Human Resources Director, Ms. Greco, and its CEO, Mr. Wohler, after they were informed of Cohen's behavior. Although there is no count in the Complaint entitled "false arrest, detention or imprisonment," "malicious prosecution," libel, slander, or the violation of a person's right to privacy, all of these offenses named in Coverage B are described in Singer's allegations. Singer's Complaint is replete with allegations of damages for mental anguish, which falls within the policy's definition of "bodily injury." See DE 50-3 at para. 71, 93, 108, 115, 126, 150, 168, 177, 180, 187, 193, 200, and 207. Ms. Singer makes a claim for "bodily injury" under the policy for an "occurrence" (sexual harassment by Cohen) which is pursuant to *CTC Development* an "accident." Although no one contends Cohen did not intend to send offensive text messages and to sexually harass Singer, he was not acting performing his duties as an executive officer or director while committing these acts, it was not alleged that Latitude had any prior knowledge of Cohen's inappropriate behavior, and there is no evidence the resulting injuries to Singer were intended by Latitude or by Cohen.

9

Likewise, there is no allegation that Wohler intended to cause injury to Singer when he negligently contacted the police and had her confined in a mental institution pursuant to the Baker Act.

Some of the events described in Singer's Complaint took place in Latitude's office during and after business hours, and other events involved the communication of inappropriate text messages and photographs by Cohen to Singer's cellular phone. The Complaint does not explicitly state whether Singer's cellular phone was her personal phone owned by her, but given that she was a secretary and there was no indication that Latitude provided a cell phone for her use, it is a reasonable inference from the Complaint that the text messages were sent to Ms. Singer's personal phone (outside of her course of employment) and the Complaint alleges some were received by her outside of business hours (again, outside of the course of her employment). DE 50-3 at para. 22.

Singer's underlying Complaint contains the following allegations which create the potential for coverage under Coverage A and/or Coverage B:

The intrusion into Singer's privacy through inappropriate texts reaching her private cellular phone including outside of business hours when she was in her home, as well as the intrusion of the police in the privacy of her home at 2:30 a.m. in response to a call from Latitude's CEO, Wohler, constituted an invasion of privacy which, pursuant to the terms of the policy's "personal and advertising injury" provision in Coverage B, should be covered. That provision includes coverage for: "Oral or written publication, in any manner, of material that violates a person's right of privacy." Wohler's communications with the police regarding his (inaccurate) assessment of her mental state would also fall under that provision. The discussion of this issue in *Purrelli v. State Farm* is instructive:

> In response to State Farm's declaratory action, Purrelli based his claim for coverage exclusively on his personal umbrella liability policy. That policy purported to limit insurance coverage to "accidents" which result in "personal injury." The policy defined personal injury to explicitly include "invasion of rights of privacy" and

10

> eleven other intentional torts, including assault and battery, false arrest, false imprisonment, libel, slander, and defamation of character. The policy contained a provision excluding personal injuries that were "expected or intended" by the insured.
> We conclude the trial court erred by granting State Farm's motion for a judgment on the pleadings because State Farm's personal umbrella liability policy is ambiguous.**[620]** The policy purports to insure invasion of privacy, an intentional tort, but excludes acts "intended" by the insured and limits coverage to "accidents." If an insurance policy is ambiguous, the ambiguity must be resolved liberally in favor of the insured. *See Prudential Property & Cas. Ins. Co. v. Swindal*, 622 So. 2d 467, 472 (Fla. 1993). Florida case law does not allow insurers to "use obscure terms to defeat the purpose for which a policy is purchased." *Weldon v. All American Life Ins. Co.*, 605 So. 2d 911, 915 (Fla. 2d DCA 1992).

*Purrelli v. State Farm Fire & Cas. Co.*, 698 So. 2d 618, 619-620, 1997 Fla. App. LEXIS 9753, 2-3, 22 Fla. L. Weekly D 2099 (Fla. Dist. Ct. App. 2d Dist. 1997).  In this case, the invasion of the right to privacy was through the oral and written publication of material, specifically: 1) the invasion of Ms. Singer's personal and private domain through the receipt of offensive text messages on her private cellular phone and during hours when she was at home, and 2) the oral publication of information which slandered Ms. Singer by making allegations of her mental instability to the police, resulting in the physical invasion of into Ms. Singer's private domain, her home, by the police and in her being confined to a mental hospital for evaluation pursuant to the Baker Act.

*State Farm v. Compupay* supports Singer's argument that Colony had a duty to defend Latitude. That case is distinguishable from this one in that Compupay, unlike Latitude, was aware of a pattern of sexual harassment and discrimination by its employee, Wank, but did nothing about it. In that case, the Court stated, "Thus, because we find that Wank's acts were intentional, and because Compupay was aware of Wank's history of sexual harassment activities, the definition of occurrence is not met and there can be no coverage under the bodily injury policy provisions." *State Farm Fire & Casualty Co. v. Compupay*, 654 So. 2d 944, 947, 1995 Fla. App. LEXIS 2590, 8, 20 Fla. L. Weekly D 653 (Fla. Dist. Ct. App. 3d Dist. 1995).  Unlike Compupay, there was no

11

allegation in this case that Latitude was aware of Cohen's conduct prior to February 4, 2012, the day Ms. Singer reported it to Wohler. Compupay attempted to establish coverage for an invasion of privacy, arguing that the unwanted physical touching of its employee by Wank constituted an invasion of privacy. Although the court found no coverage for Compupay under that provision, the Court's discussion supports coverage in this case, where there was oral and written publication constituting the invasion of privacy.

> Compupay relies on this line of cases to urge that Ode's allegations of offensive and undesired touching state a cause of action for invasion of privacy, bringing the claim within coverage under the personal injury clause. The argument fails because it ignores the clear and unambiguous language in the personal injury clause.
> The clause clearly states that coverage is available for "a publication or utterance in violation of an individual's right to privacy. . . ." (Emphasis added). The clause does not cover causes of action under the broader umbrella of invasion of privacy torts. Thus, the policy covers actions within the traditional invasion of privacy tort: a publication of personal matter. It does not include coverage for a physical invasion of the complainant's person unaccompanied by the other elements of the cause of action.

*State Farm Fire & Casualty Co. v. Compupay*, 654 So. 2d 944, 949, 1995 Fla. App. LEXIS 2590, 14-15, 20 Fla. L. Weekly D 653 (Fla. Dist. Ct. App. 3d Dist. 1995).

Subsequent to Ms. Singer's having informed Mr. Wohler on February 4 of Cohen's sexual harassment of her, Wohler contacted the police regarding his concerns that she could harm herself, resulting in Ms. Singer's involuntary detention in a mental hospital pursuant to the Baker Act for approximately 10 hours. Wohler made this call without having personally seen Ms. Singer, based only on hearsay. After being psychologically evaluated and tested for drugs, Ms. Singer was released. This fact gives rise to coverage for "false arrest, detention or imprisonment" under Coverage B of the policy as well as for the oral or written publication of material that violate's a person's right of privacy covered under sections (d) and (e) of the "personal and advertising injury" definition covered within Coverage B. "False imprisonment is the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and deprivation of his liberty. *Fisher v. Payne*, 93 Fla. 1085, 113 So. 378." *Johnson v. Weiner*, 155 Fla. 169, 171,

12

19 So. 2d 699, 700, 1944 Fla. LEXIS 500, 3 (Fla. 1944).

Colony contends Singer's claims are excluded from coverage, and therefore no duty to defend or indemnify exists. Pursuant to Florida law, exclusionary provisions must be interpreted narrowly. Colony argues that Singer's claims are barred by the Employer's Liability and Employment Related Practices exclusions. Although some aspects of Singer's Complaint may be barred by these exclusions, that is not enough to eliminate the duty to defend or, in this case, the duty to indemnify.

The Employer's Liability exclusion excludes claims "[b]ased upon or arising out of 'bodily injury' to: a. An 'employee' of the insured arising out of **and** in the course of: (1) Employment by the insured; or (2) Performing duties related to the conduct of the insured's business." Although Singer's claims could be considered to be "arising out of" bodily injury (mental anguish) to an employee of the insured (Singer), **for the exclusion to apply, her claimed "bodily injury" must both "arise out of" her employment AND 1) take place in the course of her employment by the insured or 2) in performing duties related to the conduct of the insured's business**. Policy exclusions must be narrowly construed. For this exclusion to bar coverage for Singer's claims, Singer would have to have suffered bodily injury, which includes "mental anguish," while acting in the course of her employment or performing duties related to the conduct of Latitude's business. Performing oral sex upon her supervisor and receiving lewd and offensive text messages and photographs on her personal phone did not take place in the course of Singer's employment by Latitude, nor did these events happen while Singer was performing duties related to the conduct of Latitude's business. It is important to recognize that this exclusion focuses on the person harmed, Singer, not on Cohen.[6] Even if the Court were to find Cohen's harassment of Singer fell

---

[6] There is extensive legal precedent holding that the acts of a supervisor in sexually harassing an employee do not occur in the harasser's scope of employment or in furtherance of the employer's business, although the U.S. Supreme Court has found that when these acts meet certain standards, the employer may be

somehow fell within this exclusion, it would not apply to the personal and advertising injury allegations discussed above.

> Colony's "Employment-Related Practices Exclusion" excludes liability to any person …
>
> arising out of any … employment-related practices, policies, acts, or omissions, including allegations of discrimination **by the insured** against any person on the basis of age, color, race, sex, creed, national origin, marital status, handicap, physical disability, sexual preference or allegations of coercion, demotion, negative performance evaluation, reassignment, discipline, defamation, harassment, humiliation, assault, or battery.

This exclusion read narrowly applies to "practices, policies, acts or omissions including allegations of discrimination" "by the insured." Section III of the policy defines who is an "insured." It states: "If you are designated in the Declarations as: [a]n organization other than a partnership, joint venture, or limited liability company, you are an insured. Your "executive officers" and directors are insureds, **but only with respect to their duties as your "executive officers" or directors."** The Arbitration Award includes an award for claims of discrimination under the Florida Civil Rights Act arising out of Cohen's sexual harassment of Singer, for which the arbitrator finds

---

held vicariously liable for them. "Courts of Appeals have typically held, or assumed, that conduct similar to the subject of this complaint falls outside the scope of employment. See, *e.g.*, *Harrison*, 112 F.3d at 1444 (sexual harassment "'simply is not within the job description of any supervisor or any other worker in any reputable business'"); 111 F.3d at 1535-1536 (case below); *Andrade* v. *Mayfair Management, Inc.*, 88 F.3d 258, 261 (CA4 1996) ("Illegal sexual harassment is . . . beyond the scope of supervisors' employment"); *Gary*, 59 F.3d at 1397 (harassing supervisor acts outside the scope of his employment **[794]** in creating hostile environment); *Nichols* v. *Frank*, 42 F.3d 503, 508 (CA9 1994) ("The proper analysis for employer liability in hostile environment cases is . . . *not* whether an employee was acting within his 'scope of employment'"); *Bouton* v. *BMW of North Am., Inc.*, 29 F.3d 103, 107 (CA3 1994) (sexual harassment is outside scope of employment); see also *Ellerth* v. *Burlington Industries, Inc.*, decided with *Jansen* v. *Packaging Corp. of America*, 123 F.3d 490, 561 (CA7 1997) (en banc) (Manion, J., concurring and dissenting) (supervisor's harassment would fall within scope of employment only in "the rare case indeed"), cert. granted, No. 97-569; Lindemann & Grossman 812 ("Hostile environment sexual harassment normally does not trigger respondeat superior liability because sexual harassment rarely, if ever, is among the official duties of a supervisor"). But cf. *Martin* v. *Cavalier Hotel Corp.*, 48 F.3d 1343, 1351-1352 (CA4 1995) (holding employer vicariously liable in part based on finding that the supervisor's rape of employee was within the scope of employment); *Kauffman* v. *Allied Signal, Inc.*, 970 F.2d 178, 184 (CA6) (holding that a supervisor's harassment was within the scope of his employment, but nevertheless requiring the victim to show that the employer failed to respond adequately when it learned of the harassment), cert. denied, 506 U.S. 1041, 121 L. Ed. 2d 701, 113 S. Ct. 831 (1992). In so doing, the courts have emphasized that harassment consisting of unwelcome remarks and touching is motivated solely by individual desires and serves no purpose of the employer." Faragher v. City of Boca Raton, 524 U.S. 775, 793-794 (U.S. 1998)

Latitude vicariously liable. Although Latitude is liable pursuant to the holding of *Faragher v. City of Boca Raton,* the holding of that case is limited to application to Title VII[7] and has no place being imported into the language of Colony's policy without Colony having included language in the policy to effectuate that purpose. Colony did not do that, and so is stuck with the language it chose. There are no allegations in Singer's Complaint that would support a finding that Cohen's duties as the Chief Financial Officer or as a Director of Latitude included sending Singer inappropriate and offensive text messages or pressuring her to perform oral sex.  Although certain allegations for acts of Latitude are for employment practices that would be barred by this exclusion, many are not, and so the duty to defend and to indemnify exists.

### D.  Colony Has a Duty to Indemnify Latitude for the Arbitration Award

The Arbitration Award against Latitude was attached to the Plaintiff's Amended Complaint as DE 50-4, and the related Judgment, which includes an award of attorney's fees and costs, can be found at DE 50-5.  The Arbitrator awarded Singer $550,000 in compensatory damages and $100,000 in punitive damages for the following counts of the Complaint:

  1) Count VIII – Negligent Supervision and Training against Latitude

  2) Count X – Negligent Infliction of Emotional Distress against Latitude

  3) Count XIII – Sexual Harassment pursuant to Fla. Stat. §760 against Latitude.

There was no differentiation of the damages awarded for the various claims.

Having breached its duty to defend and left Latitude to its own devices, Colony now urges the Court to reward its behavior by placing upon Singer a burden to seek an award of damages that are differentiated between covered and non-covered claims. Now, after the judgment has been

---

[7] "We therefore agree with Faragher that in implementing Title VII it makes sense to hold an employer vicariously liable for some tortious conduct of a supervisor made possible by abuse of his supervisory authority, and that the aided-by-agency-relation principle embodied in § 219(2)(d) of the Restatement provides an appropriate starting point for determining liability for the kind of harassment presented here.  Faragher v. City of Boca Raton, 524 U.S. 775, 802 (U.S. 1998)

entered, Colony is taking the position that there can be no recovery by Singer (or indemnity on behalf of Latitude) because there was no finding by the arbitrator specifying the amount of damages allocated to covered and non-covered claims. In support of this proposition, Colony cites *Duke v. Hoch*, 468 F.2d 973, 974, 1972 U.S. App. LEXIS 7288, 1 (5th Cir. Fla. 1972). Colony's reliance is misplaced, as in that matter the insurer defended the claim under a reservation of rights, thereby protecting its right to seek an allocation of the damages. In *Aetna Ins. Co. v. Waco Scaffold & Shoring Co.*, 370 So. 2d 1149, 1152, 1978 Fla. App. LEXIS 16172, 10 (Fla. Dist. Ct. App. 4th Dist. 1978), the Court held, "Regardless of the fact that under the Mason complaint appellants were required to defend the suit, the burden of proving the allegations regarding coverage is upon appellee and appellee failed to prove that appellants' policies covered the liability upon which the verdict and judgment were founded." Again, in that case the insurer had defended its insured.

Florida law obligates insurers to respond to a claim against their insured by providing a defense, refusing in writing to defend the claim, or providing a defense through mutually agreeable counsel under a reservation of rights. Fla. Stat. 627.426.  Insurers which deny the defense outright, leaving the insured to its own devices as Colony did in this case, are treated harshly under Florida law if they are found to have made the wrong decision regarding coverage.  Such insurers are bound by Florida law to reasonable consent judgments, commonly referred to as "Coblentz agreements," even where the amount of the settlement exceeds policy limits. A valid Coblentz agreement permits an insured, under limited circumstances, to independently enter into a consent judgment that is binding on an insurer who denies coverage and refuses to provide a defense. See Coblentz v. Am. Sur. Co. of N.Y., 416 F.2d 1059, 1062-63 (5th Cir. 1969); see also Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting the case law of the former Fifth Circuit developed before October 1, 1981, as precedent in this Circuit).  *Petro v. Travelers Cas. & Sur. Co. of Am.*, 2014 U.S. Dist. LEXIS 142627, *6 (N.D. Fla. 2014).

Plaintiff agrees with Colony that in circumstances where the insurer has provided a defense

16

under a reservation of rights, the party seeking to recover from the insurer is obligated to seek a judgment allocating the covered and non-covered damages.  See *United States Concrete Pipe Co. v. Bould*, 437 So. 2d 1061, 1065, 1983 Fla. LEXIS 2934, 11 (Fla. 1983)(If a judgment includes elements for which an insurer is liable and also elements beyond the coverage of the policy, the burden of apportioning or allocating these damages is on the party seeking to recover from the insurer.)  "[U]nder Florida law, the burden of apportioning damage following a jury verdict generally rests with the party seeking to recover from the insured, but this is only true "[w]here the judgment includes elements for which an insurer may be liable as well as elements beyond the coverage of the policy." Guarantee Ins. Co. v. Gulf Insurance Co., 628 F. Supp. 867, 870 (S.D. Fla. 1986)(citations omitted)(emphasis supplied); aff'd, 811 F.2d 610 (11th Cir. 1987). *Mid-Continent Cas. Co. v. Clean Seas Co.*, 860 F. Supp. 2d 1318, 1322-1323 (M.D. Fla. 2012).  In this case, the Arbitrator arguably only awarded damages pursuant to three covered claims described by the arbitrator as negligent management, negligent infliction of emotional distress, and discrimination under the Florida Civil Rights act deriving from Cohen's sexual harassment of Singer.

      Colony did not provide a defense to Latitude, nor did it seek to intervene or inform either Latitude or Singer that they should seek a differentiated award from the arbitrator. In these circumstances, Colony cannot refuse at this point to indemnify Latitude for any non-covered claims which may be included in the arbitration award, or to retroactively impose upon Singer and/or Latitude an obligation to seek an allocation of the damages. To do so would impose a manifest injustice on Singer and/or Latitude.  A similar situation was addressed in the context of a coverage action regarding damages for defective construction by the Middle District of Florida in *Arnett v. Mid-Continent*:

> If GAIC ultimately succeeds in showing that the "judgment includes elements for which an insurer is liable and also elements beyond the coverage of the policy, the burden of apportioning or allocating these damages is on the party seeking to

17

> recover from the insurer."*See U.S. Concrete Pipe Co. v. Bould,* 437 So. 2d 1061, 1065 (Fla. 1983); *Duke,* 468 F.3d at 977. The parties agree that this is impossible. However, insureds may be relieved of this "impossible burden of proof" where "the insurer failed to fully advise its insureds of the divergence of interest between it and them with respect to the [use of an allocated] verdict." *Duke,* 468 F.2d at 979-80. The insurer plainly has an interest in using a general verdict form when an action involves elements of both covered and non-covered damages. *Id.* at 979. To the insured, the inevitable consequence of a general verdict is a "catastrophic total loss of coverage." *Id.* But "the insurance company loses no benefit to which it is validly entitled from having the jury earmark the losses." *Id.* **Accordingly, the insurance company is "required to make known to the insured the availability of a special verdict and the divergence of interest" between the insurer and insured "springing from whether damages [a]re or [a]re not allocated."** *Id.*

*Arnett v. Mid-Continent Cas. Co.*, 2010 U.S. Dist. LEXIS 71666, *14-16 (M.D. Fla. July 16, 2010)(emphasis added). Colony denied coverage and had no more involvement in the matter. It did not inform its insured of the availability of a special verdict as it was required to do to protect its right to deny coverage for non-covered claims. This was probably because Colony was convinced it was right in denying coverage, and was a decision made at its own peril if the Court finds there was coverage for any of the claims awarded by the Court.

Colony's arguments that punitive damages are not covered by the policy are similarly without merit. "Florida public policy does not preclude insurance coverage of punitive damages when the insured himself is not personally at fault, but is merely vicariously liable for another's wrong. 31 Fla.Jur.2d Insurance § 876 (1981)." *United States Concrete Pipe Co. v. Bould*, 437 So. 2d 1061, 1064, 1983 Fla. LEXIS 2934, 6 (Fla. 1983). The liability assessed by the arbitrator against Latitude appears to be vicarious liability for the actions of Cohen. To the extent these items need to be apportioned, Colony's failure to inform the insured of the availability of a special verdict results in its waiver of the right to apportionment and in coverage for the punitive damages, as stated above.

Finally, there is no support in the policy for Colony's position that it should not be required to pay the cost and attorney's fee award or for the Court's award of interest through its final

18

judgment. Costs and interest are specifically covered under the policy's "Supplementary Payments" provision. DE 50-6 at 9. An award of attorney's fees in the circumstances of this case is contained in the policy's definition of "damages," which states: "'Damages' means the monetary amount of judgments, awards and settlements an insured becomes legally obligated to pay as a result of a 'claim.' 'Damages' does not include equitable or non-pecuniary relief, disgorgement of profits, sanctions, fines or penalties." The Court's award of attorney's fees was pursuant to a prevailing party fee provision contained in Singer's employment agreement, also pursuant to which Colony forced the matter into arbitration. As such, the fee award was no a fine, sanction or penalty, and is included as "damages" covered by the policy.

## CONCLUSION

For the reasons stated herein, Singer is entitled to summary judgment in this matter finding that Colony owed a duty to defend and indemnify Latitude, and awarding: 1) $550,000 in compensatory damages awarded by the arbitrator; 2) $100,000 in punitive damages awarded by the arbitrator; 3) $201,081.55 awarded by the Court for attorney's fees and costs; 4) $517,000 incurred by Latitude for the defense provided by DLA Piper prior to its withdrawal from the action; and 5) statutory interest from the entry of the judgment confirming the arbitration award. Additionally, Singer as Latitude's assignee is entitled to an award of costs and to attorney's fees in this action pursuant to Fla. Stat. §627.428.

WHEREFORE, for the reasons stated above, Plaintiff respectfully requests summary judgment be granted and damages awarded to Plaintiff as outlined above in her capacity as assignee of Colony's insured, Latitude Solutions, Inc. and as Latitude's judgment creditor, in her favor and against Colony Insurance Company with respect to both the duty to defend and the duty to indemnify, and requests that the Court maintain jurisdiction for purpose of awarding costs and statutory attorney's fees.

Respectfully submitted,

// *Michelle Niemeyer*_____
Michelle Melin Niemeyer
Counsel for Plaintiff Carly Singer
Florida Bar No. 119628
Michelle M. Niemeyer, P.A.
2665 South Bayshore Drive, Ste 700
Miami, FL 33133
(305) 443-1818
mniemeyer@paymyclaim.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on May 26, 2015, I electronically filed the foregoing document with the Clerk of Courts using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

BY:    // *Michelle Niemeyer*_____
Michelle Melin Niemeyer
Florida Bar No. 119628