UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-22310-CIV-GAYLES/TURNOFF

**CARLY SINGER**,

    Plaintiff,

v.

**COLONY INSURANCE COMPANY**,

    Defendant.

_____/

## ORDER

**THIS CAUSE** comes before the Court upon Colony Insurance Company's Motion for Final Summary Judgment and Memorandum of Law in Support ("Defendant's Motion") [ECF No. 54] and Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") [ECF No. 79]. The Court has considered the parties' written submissions, the record, and the applicable law. For the reasons set forth below, Defendant's Motion is **GRANTED** and Plaintiff's Motion is **DENIED**.

## BACKGROUND

### I. The Underlying Complaint

On March 16, 2012, Plaintiff Carly Singer filed an action (the "Underlying Action") against her former employer, Latitude Solutions, Inc. ("Latitude"), and Latitude's Chief Financial Officer, Matthew J. Cohen ("Cohen"), alleging claims for assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, negligent hiring, negligent retention, negligent supervision and training, negligent misrepresentation, violation of the Florida Private Whistleblower's Protection Act, invasion of privacy, and sexual harassment and retaliation under Florida and Federal Law (the "Underlying Complaint"). As set forth in the Underlying Complaint,

Cohen verbally and physically harassed Plaintiff, including making harassing comments, forcing unwanted physical contact, and sending offensive text messages. Plaintiff eventually reported the sexual harassment to Latitude. In retaliation, "someone from Latitude" called the police, resulting in the police arriving at Plaintiff's home in the middle of the night and detaining her under the Baker Act.[1]

The Court in the Underlying Action compelled arbitration, and, on November 21, 2013, the arbitrator entered an award against Latitude and in favor of Plaintiff.[2] On April 24, 2014, the Court in the Underlying Action issued a final judgment against Latitude.

**II. The Policy**

At the time of the allegations in the Underlying Complaint, Latitude had a General Liability Policy (the "Policy") with Defendant Colony Insurance Company ("Defendant"). The Policy covered claims for both Bodily Injury and Personal and Advertising Injury. The relevant provisions provide:

<u>**Coverage**</u>

- Insuring Agreement A – Bodily Injury and Property Damage

    - We will pay . . . "damages" because of "bodily injury" or "property damage" to which this insurance applies. . . .

    - This insurance applies to "bodily injury" and "property damage" only if all of the following conditions are met. . .

        o   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"

---

1   The Baker Act is a Florida mental health law which allows a person to be taken to a facility for involuntary examination if certain conditions are met. *See* Fla.Stat. § 394.463.

2   Plaintiff and Cohen reached a settlement before the arbitration.

- Insuring Agreement B – Personal and Advertising Injury

    - We will pay . . . "damages" because of "personal and advertising injury" to which this insurance applies.

[ECF 1-9 at 9].

## **Definitions**

- "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

- "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:
    a. False arrest, detention or imprisonment;
    b. Malicious prosecution . . .
    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization  . . .
    e. Oral or written publication, in any manner, of material that violates a person's right of privacy . . .

[ECF 1-10 at 4].

## **Exclusions**

- Employment-Related Practices.

    Based upon or arising out of any liability to:

    - A person arising out of any:

        o Employment-related practices, policies, acts or omissions, including allegations of discrimination by the insured against any person on the basis of age, color, race, sex, creed, national origin, marital status, handicap, physical disability, sexual preference or allegations or coercion, demotion, negative performance evaluation, reassignment, discipline, defamation, harassment, humiliation, assault or battery . . .

        This exclusion applies whether the insured may be liable as an employer or in any other capacity; and to any obligation to share "damages" with or repay someone else who must pay "damages" because of injury.

3

- The following additional exclusions apply to Insuring Agreement B – Personal and Advertising Injury in addition to those contained within the Common Policy Provisions:

    - Knowing Violation of Rights of Another

        o Based upon or arising out of "personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

[ECF Nos. 1-8 at 12, 1-10 at 12]. Based on its interpretation of the terms of the Policy, Defendant denied coverage for both defense and indemnity of the Underlying Action against Latitude.

### III. The Current Action

Latitude filed for bankruptcy protection on November 9, 2012. The Trustee in bankruptcy assigned Latitude's rights against its insurers to Plaintiff. On February 20, 2015, Plaintiff filed her Amended Complaint in this action, alleging that Defendant breached its duty to defend and indemnify Latitude in the underlying action [ECF No. 50]. The parties have each moved for summary judgment [ECF Nos. 54, 79].

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a) "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "[T]he plain language of Rule 56[a] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clarks, Inc.*, 929 F.3d 604, 608 (11th Cir. 1991). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but … must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

## ANALYSIS

### I. Insurance Policy Construction

#### A. General Principles

The parties agree that Florida law applies to the Policy and this dispute. Under Florida law, "[i]nsurance contracts are construed according to their plain meaning, with any ambiguities construed against the insurer and in favor of coverage." *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So.2d 871, 877 (Fla. 2007). If there is a dispute over coverage and exclusions, the Court employs a burden-shifting framework. *See E.S.Y., Inc. v. Scottsdale Ins. Co.*, No. 15-21349-CIV, 2015 WL 6164666 (S.D. Fla. October 14, 2015). "A person seeking to recover on an insurance policy has the burden of proving a loss from causes within the terms of the policy[,] and if such proof of loss is made within the contract of insurance, the burden is on the insurer to establish that the loss arose

5

from a cause that is excepted from the policy . . ." *Id.* (quoting *U.S. Liab. Ins. Co. v. Bove*, 347 So.2d 678, 680 (Fla. 3d DCA 1977). If the insurer is able to establish that an exclusion applies, the burden shifts to the insured to prove an exception to the exclusion. *Id.*

### B. Duty to Defend and Indemnify

To determine whether Defendant had a duty to defend Latitude, the Court looks only to the allegations in the Underlying Complaint and the terms of the Policy. *See Jones v. Florida Ins. Guar. Ass'n, Inc.*, 908 So.2d 435, 442–43 (Fla. 2005). If the allegations in the Underlying Complaint do not establish coverage, there is no duty to defend. *James River Ins. Co. v. Bodywell Nutrition, LLC*, 842 F. Supp. 2d 1351, 1354 (S.D. Fla. 2012) (citing *Posigian v. American Reliance Ins. Co. of New Jersey*, 549 So. 2d 751, 753 (Fla. 3d DCA 1989)). Unsupported and conclusory "buzz words" are insufficient to trigger coverage. *State Farm Fire and Cas. Co. v. Setinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004). In addition, inferences are insufficient to trigger coverage. *Fun Spree Vacations, Inc. v. Orion Ins. Co.,* 659 So. 2d 419, 421-22 (Fla. 3d DCA 1995) ("[T]he allegations in the complaint control in determining the insurer's duty to defend . . . inferences are not sufficient.") (citations omitted). The parties agree that where there is no duty to defend, there is no duty to indemnify. *See E.S.Y.*, 2015 WL 6164666 at * 6 (citing *Farrer v. U.S. Fid. & Guar. Co.*, 809 So.2d 85, 88 (Fla. 4th DCA 2002)).

### II. Defendant Had No Duty to Defend Latitude

Plaintiff asserts that Defendant had a duty to defend Latitude based on her allegations in the Underlying Complaint relating to sexual harassment, false imprisonment, malicious prosecution, libel, slander, and invasion of privacy. The Court disagrees.

### A. Bodily Injury

Plaintiff asserts that the sexual harassment allegations in the Underlying Complaint qualify as "bodily injury" and are covered under the Policy. It is undisputed that Plaintiff's alleged mental anguish is sufficient to constitute bodily injury. To trigger coverage, the acts causing the mental anguish must constitute an "occurrence." The Policy defines "occurrence" as an accident. The policy, however, does not define accident. Under Florida law, "where the term 'accident' in a liability policy is not defined, the term, being susceptible to varying interpretations, encompasses not only 'accidental events,' but also injuries or damages neither expected nor intended from the standpoint of the insured." *State Farm Fire & Casualty Co. v. CTC Development Corp.*, 720 So.2d 1072, 1076 (Fla. 1998). Cohen's alleged sexual harassment of Plaintiff was clearly intentional conduct and, therefore, not an "occurrence." *See State Farm Fire & Cas. Co. v. Compupay*, 654 So.2d 944, 946-47 (Fla. 3d DCA 1995) ("Harassment and discrimination are neither negligent nor accidental. . ."). However, the Underlying Complaint does not allege that Latitude expected or intended the harassment. Indeed, the allegations support a finding that Latitude did not even know about the harassment until Plaintiff reported it. As a result, Plaintiff's bodily injury arising out of Latitude's negligent hiring, supervision, training, and retention of Cohen constitute an occurrence.

Defendant relies heavily on *Compupay* for the proposition that sexual harassment is always an intentional act and therefore cannot be an "accident." In *Compupay*, however, the insured employer had knowledge of it's employee's past behavior. *Compupay*, 654 So.2d at 954 ("Thus, because we find that Wank's acts were intentional, and because Compupay was aware of Wank's history of sexual harassment activities, the definition of occurrence is not met and there can be no coverage under the bodily injury policy provisions."). In this matter, the Underlying Complaint does not allege that Latitude had actual knowledge of Cohen's behavior. Therefore, the allegations

7

against Latitude constitute an occurrence. *See Sunshine Birds and Supplies, Inc. v. United States Fidelity and Guaranty Co.*, 696 So.2d 907, 911 (Fla. 3d DCA 1997) (distinguishing *Compupay* where the plaintiffs alternatively pled that the insured employer only had constructive knowledge of employees' improper behavior).

Although Plaintiff's underlying claim for bodily injury against Latitude constitutes an occurrence, the Court finds the claim is excluded from coverage. The Employment-Related Practices exclusion excludes coverage based upon or arising out of liability due to employment-related practices, policies, acts, or omissions, including allegations of harassment, assault, or battery. Under Florida law, the term "arising out of" is "broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with.'" *Taurus Holdings, Inc. v. United States Fid. & Guar. Co.,* 913 So.2d 528, 539 (Fla. 2005). In *American Empire Surplus Lines Ins. Co. v. Chabad House of North Dade, Inc.*, 771 F.Supp.2d 1336, 1340 (S.D. Fla. 2011), plaintiffs in the underlying action sued the insured for negligence in selecting and retaining two volunteers after the volunteers abused the plaintiffs' minor son. The insurer denied coverage based on a policy provision excluding coverage for claims arising out of abuse or molestation. The court found that the policy exclusion barred coverage because the negligence claims arose out of the abuse and molestation allegations. *Id.* at 1340. Similarly, in this action, the employment-related practices exclusion bars coverage for Plaintiff's bodily injury. All of her claims for bodily injury arise out of the sexual harassment and assault and battery claims. Latitude's alleged negligence was based on its hiring, supervision, and retention of an employee who harassed and abused another employee. Therefore, Defendant had no duty to defend Latitude on any claims arising out of the harassment. *Id. See also Dueno v. Modern USA Insurance Co.*, 152 So.3d 60, 63 (Fla. 5th DCA 2014) ("[T]he exclusion for claims '[a]rising out of actual or alleged sexual

molestation' . . . should have barred recover for injuries attributable to a battery, even if pursued under a negligent retention theory.").

### B. Personal and Advertising Injury

Plaintiff argues that the allegations in the Underlying Complaint relating to false imprisonment, malicious prosecution, libel, slander, and invasion of privacy all constitute personal and advertising injury and, therefore, are covered under the policy.

#### 1. False imprisonment

False imprisonment constitutes "personal and advertising injury" under the Policy. The Underlying Complaint alleges that an unidentified Latitude employee called the police about Plaintiff and that the police later detained Plaintiff for a mental evaluation.

To state a cause of action for false imprisonment, a plaintiff must allege: "1) the unlawful detention and deprivation of liberty of a person; 2) against that person's will; 3) without legal authority or 'color of authority' and 4) which is unreasonable and unwarranted under the circumstances." *Harder v. Edwards*, Nos. 4D14-1732, 4D14-1928, 2015 WL 5026301 at *4 (Fla. 4th DCA Aug. 26, 2015). "[W]here a citizen provides information to law enforcement, without more, such action does not constitute false imprisonment." *Id.* (citing *Pokorny v. First Federal Savings & Loan Ass'n of Largo*, 382 So.2d 678 (Fla. 1980)). A private citizen may only be liable for false imprisonment if that person instigated the arrest. *Id.* "It is not enough for instigation that the actor has given information to the police about the commission of a crime, or has accused the other of committing it, so long as he leaves to the police the decision as to what shall be done about any arrest, without persuading or influencing them." *Id.* (quoting Restatement (Second) of Torts § 45A, Comment c).

The allegations in the Underlying Complaint are not sufficient to state a claim for false imprisonment. Plaintiff did not allege that the unidentified Latitude employee "instigated" the arrest or somehow persuaded or influenced the police to detain Plaintiff. Accordingly, Defendant had no duty to defend Latitude based on Plaintiff's false imprisonment claim.[3]

### 2. Libel/Slander

The "oral or written publication" of material that slanders or libels a person constitutes a personal and advertising injury under the Policy. Plaintiff asserts that her allegations about the unidentified Latitude employee's call to law enforcement are sufficient to state a claim for libel or slander.

A mistaken report to law enforcement only rises to the level of libel or slander if it is done with malice. *See Bank of America Corp. v. Valladares*, 141 So.3d 714, 717 (2014). "A person calling the police to report a possible crime is not liable for a good faith mistake even if the individual reported suffers personal injuries at the hands of the police. Calling the police to report a crime rises to the level of a tort only if the reporter acts maliciously, meaning the reporter either knows the report is false or recklessly disregards whether the report is false." *Id.* at 718. Although the Underlying Complaint references an unidentified Latitude employee's report to the police, Plaintiff did not allege malice. Indeed, Plaintiff's allegations regarding the report and subsequent detention are vague and lack specificity, even as to who made the call. Without an allegation of malice, Defendant has no duty to defend based on a libel or slander claim.

---

3   Plaintiff also references a malicious prosecution claim. However, to state a claim for malicious prosecution, there must be an allegation that a party commenced judicial proceedings against Plaintiff. There are no such allegations in the Underlying Complaint. *See Everett v. Florida Inst. of Technology*, 503 So.2d 1382, 1383 (Fla. 5th DCA 1987).

10

### 3. Invasion of Privacy

The Policy also covers injuries arising out of the oral or written publication of material that violates a person's right to privacy. The Underlying Complaint contained a count for invasion of privacy, based on Cohen's offensive text messages to, and general harassment of, Plaintiff and the unidentified Latitude employee's report to the police.

For the Policy to cover an invasion of privacy, there must be an oral or written publication. The policy does not define "publication." The Florida Supreme Court has defined publication as "communication (as of news or information) . . . for general distribution to the public." *See Penzer v. Transportation Ins. Co.*, 29 So.3d 1000, 1006 (Fla. 2010)(citations omitted). The Underlying Complaint does not allege that Cohen disseminated any of his text messages or comments to the public or that the Latitude employee's call to the police somehow conveyed information to the public. Because there was never an oral or written publication, Defendant had no duty to defend based on Plaintiff's invasion of privacy claim. In addition, Cohen's alleged sexual harassment of Plaintiff does not constitute an invasion of privacy. *See Allstate Ins. Co. v. Ginsberg*, 863 So.2d 156, 162 (Fla. 2003) (the tort of invasion of privacy does not include "unwelcome conduct including touching in a sexual manner and sexually offensive comments.").

### 4. Exclusion

Even if the Underlying Complaint sufficiently established personal and advertising injury resulting from false imprisonment, malicious prosecution, libel, slander, or invasion of privacy, Defendant had no duty to defend Latitude because the Policy excludes coverage for personal and advertising injury where the insured knowingly violates the rights of another. The allegations in the Underlying Complaint clearly support a finding that Cohen and the Latitude employee who called the

11

police both acted with knowledge.  Therefore, the exclusion applies and Defendant had no duty to defend Latitude for that reason.

### III. Defendant had no duty to indemnify Latitude

The Court has found that Defendant had no duty to defend Latitude.  Accordingly, Defendant had no duty to indemnify Latitude.  *See E.S.Y.*, 2015 WL 6164666 at *4.

### CONCLUSION

As the Defendant had no duty to defend or indemnify Latitude in the Underlying Action, it has not breached the Policy.  Accordingly, it is

**ORDERED AND ADJUDGED** that Colony Insurance Company's Motion for Final Summary Judgment and Memorandum of Law in Support ("Defendant's Motion ") [ECF No. 54] is **GRANTED** and Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") [ECF No. 79] is **DENIED**.  Judgment is entered in favor of Defendant.  It is further

**ORDERED AND ADJUDGED** that this action shall be **CLOSED** for administrative purposes, and all pending motions are **DENIED** as moot.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 30th day of November, 2015.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc:   Magistrate Judge Turnoff
      All Counsel of Record